UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES D. BACHUS; and BARBARA BACHUS,


                        Plaintiffs,                          1:09-CV-0843
            -v-                                              (GTS/RFT)

SCHENECTADY CITY SCH. DIST.;
MICHAEL SAN ANGELO; MICHAEL STRICOS;
and STEPHEN RAUCCI,


                        Defendants,
_____

MICHAEL STRICOS,

                        Cross-Claimant,

            -v-

STEPHEN RAUCCI,

                        Cross-Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

TOWNE, RYAN & PARTNERS, P.C.                    JOHN J. HOKE, ESQ.
   Counsel for Plaintiffs                       ELENA DeFIO KEAN, ESQ.
450 New Karner Road                             JAMES T. TOWNE, JR., ESQ.
P.O. Box 15072
Albany, NY 12205

GIRVIN & FERLAZZO, P.C.                         PATRICK J. FITZGERALD, ESQ.
   Counsel for Defendant Schenectady CSD
20 Corporate Woods Boulevard, 2nd Floor
Albany, NY 12211-2350

TABNER RYAN & KENIRY, LLP                       THOMAS R. FALLATI, ESQ.
   Counsel for Defendant Michael San Angelo
18 Corporate Woods Boulevard
Albany, NY 12211-2605

BARTLETT, PONTIFF, STEWART & RHODES, P.C.   BENJAMIN R. PRATT, JR., ESQ.
  Counsel for Defendant Michael San Angelo    EILEEN M. HAYNES, ESQ.
One Washington Street
P.O. Box 2168
Glens Falls, NY 12801-2168

LUIBRAND LAW FIRM, PLLC            KEVIN A. LUIBRAND, ESQ.
  Counsel for Michael Stricos
950 New Loudon Road
Latham, NY 12110

STEPHEN RAUCCI
  Defendant, *Pro Se*

HON. GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

Currently before the Court in this employment civil rights action, filed by James D. Bachus and Barbara Bachus ("Plaintiffs") against the Schenectady City School District (hereinafter "SCSD"), Michael San Angelo, Michael Stricos, and Stephen Raucci (hereinafter "Defendants"), are the following two motions: (1) Defendant SCSD's motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 22); and (2) Defendant San Angelo's motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 28).  For the reasons set forth below, Defendant SCSD's motion is denied; and Defendant San Angelo's motion is granted.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Complaint

Generally, liberally construed, Plaintiffs' Complaint alleges as follows.  (*See generally*, Dkt. No. 1.)

Plaintiff Barbara Bachus (hereinafter "Mrs. Bachus") has been employed as a teacher for SCSD for twenty-one years.  Plaintiff James D. Bachus (hereinafter "Mr. Bachus") has been employed as a utility worker for Defendant SCSD for twenty-nine years.  As a utility worker, Mr. Bachus was tasked with performing ordinary and routine maintenance work throughout SCSD's buildings and physical property.  Mr. Bachus was supervised in his position by Defendant Raucci, who held the *de facto* title of Director of Facilities.  In that capacity, Mr. Bachus witnessed Defendant Raucci engage in a multitude of inappropriate behavior, including implicit and explicit threats to physically injure his subordinates who disagreed with his management style, or alternatively, his professed absolute control of CSEA Local 847, Schenectady City School District Unit (hereinafter "CSEA").

Defendant Raucci often ostracized individuals who complained or voiced any concern outside of the Operations & Maintenance Department at SCSD by changing their hours, denying or manipulating time records to reduce accruals, changing their job description, summarily disciplining the complaining employee, or otherwise orchestrating the employee's removal from the Operations and Maintenance Department in a retaliatory manner.  After witnessing countless examples of this conduct over a period of years, Mr. Bachus decided to oppose Defendant Raucci in the upcoming CSEA elections.  In an effort to obtain information concerning the election process, Mr. Bachus called the CSEA local office on or about January 21, 2009.

On January 22, 2009, Defendant Raucci summoned Mr. Bachus into his office and indicated that a CSEA local official had contacted him and informed him of Mr. Bachus's intentions to run for CSEA Presidency.  Later that day, Mr. Bachus was told by the acting labor foreman that he was to report to the high school to function as a cleaner.  Such work was outside

3

the traditional scope of Mr. Bachus's employment, but was a method utilized by Defendant Raucci to punish, and retaliate against, those who questioned his authority.  Minutes after Mr. Bachus was told to report to the high school to function as a cleaner, Defendant Raucci called all of the employees together and publicly announced in a mocking tone that Mr. Bachus intended to oppose him for the CSEA Presidency.  Defendant Raucci then physically threatened Mr. Bachus, at which time Mr. Bachus reminded Raucci that he was physically threatening him in a room full of witnesses.  Raucci continued by stating, in mocking and exaggerated terms, that there were no witnesses who would support Mr. Bachus and that Raucci could say what he wanted because there was nothing anyone could do about it.  The other employees who had gathered remained obediently silent during the interaction.  Raucci continued by stating that he would settle the matter "off the clock."  After the group dispersed, Raucci threatened to torment Mrs. Bachus and Plaintiffs' fifteen year-old son.

The following day, as an immediate result of the incidents that occurred on January 22, 2009, Mr. Bachus was forced to seek medical assistance for a rapid heart beat and stress.  Accordingly, Mr. Bachus did not attend work.  Upon information and belief, Raucci instructed all employees to write a statement outlining the conduct they observed the preceding day, promising them that their statements would be kept confidential.  Upon information and belief, later in the afternoon, each statement was publicly read aloud to all employees in SCSD's Carpenter's Shop.  Those individuals who accurately reported what had occurred the previous day were threatened and told only to repeat the version of events that Raucci approved.

On January 26, 2009, Plaintiffs met with Human Resources Director Michael Stricos (hereinafter "Defendant Stricos") and Assistant Superintendent Michael San Angelo (hereinafter

4

"Defendant San Angelo"), to whom they reported the incidents that occurred on January 22, 2009, as well as other incidents, and described the overall dangerous and hostile employment atmosphere within the Operations & Maintenance Department.  Both Defendant Stricos and Defendant San Angelo took extensive notes during the meetings.  On or around this day, Mr. Bachus took medical leave as a result of suffering an emotional and physical breakdown directly attributable to the incidents of January 22, 2009.  While on medical leave, Mrs. Bachus suffered retaliation at the hands of Raucci, who refused to supply her classroom with heat.

Between January 29, 2009 and February 9, 2009, Defendant Stricos contacted Defendant Raucci, who provided selected individuals for Defendant Stricos to interview concerning the incidents of January 22, 2009.  On February 2, 2009, Mrs. Bachus's Union representative approached Superintendent Eric Ely to report the direct physical threat to its member, Mrs. Bachus.  On February 9, 2009, Mr. Bachus was advised that he would be disciplined for purported insubordination.

On February 12, 2009, Mr. Bachus returned to work.  On the same day, Mr. Bachus was instructed by Raucci to report to the high school to perform menial tasks, which he had performed only once before the incidents of January 22, 2009.  As a result of the emotional trauma and humiliation caused by Raucci, Mr. Bachus was forced to take additional medical leave between February 12, 2009, and March 6, 2009.

On February 19, 2009, despite his position as CSEA President in which he was tasked with representing union member interests, Raucci made a request to Superintendent Ely that Mr. Bachus be suspended for a period of ninety days.  Upon information and belief, this suspension would have prevented Mr. Bachus from appealing the determination rendered by Defendant

5

Stricos that Mr. Bachus be punished for insubordination.  On February 20, 2009, Raucci was arrested.  Following Raucci's arrest, Mr. Bachus presented Defendant Stricos with a medical excuse justifying his absence. Defendant Stricos responded by laughing in Mr. Bachus's face, which caused him additional humiliation.

Mr. Bachus returned to work on March 6, 2009.  At some point later in time, Mr. Bachus was interviewed by an investigator hired by SCSD.  During the interview, Mr. Bachus told the investigator about the incidents with Raucci that occurred on January 22, 2009, as well as other incidents he witnessed during the course of his employment.  No corrective action was ever undertaken to address Raucci's conduct toward Mr. Bachus, nor was any corrective action taken to cure the unfounded determination of insubordination rendered by Defendants Stricos and San Angelo.

Based on these allegations, Mr. Bachus asserts the following three claims: (1) a claim of retaliation under the First Amendment against all Defendants, based on his exercise of his right to freedom of speech; (2) a claim of retaliation under the First Amendment against all Defendants, based on his exercise of his right to freedom of association; and (3) a claim of intentional infliction of emotional distress under New York State law against Defendants San Angelo, Stricos, and Raucci.  (Dkt. No. 1.)  In addition, Mrs. Bachus asserts a claim of retaliation under the First Amendment against all Defendnats, based on her intimate association with her husband.  (*Id*.)

Familiarity with the remaining factual allegations supporting these claims in Plaintiffs' Complaint is assumed in this Decision and Order, which is intended primarily for the review of the parties.  (*Id*.)

**B.      Defendant SCSD and Defendant San Angelo's Motions**

Generally, in support of its motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), Defendant SCSD argues as follows: (1) Plaintiffs' retaliation claim must be dismissed because they have failed to allege facts plausibly suggesting a custom or policy of retaliation; (2) Mr. Bachus's first retaliation claim must be dismissed because (a) the speech that forms the basis of this claim does not involve a matter of public concern, and (b) the Complaint fails to allege facts plausibly suggesting that the speech was a motivating factor in any alleged adverse employment action taken by SCSD; (3) Mr. Bachus's second retaliation claim must be dismissed because (a) association with CSEA does not involve a matter of public concern, and (b) the Complaint fails to allege facts plausibly suggesting that Mr. Bachus's association with CSEA was a substantial motivating factor in any alleged retaliatory conduct; (4) Mr. Bachus's intentional infliction of emotional distress claim must be dismissed because (a) Plaintiffs failed to comply with the requirements of N.Y. Educ. Law § 3813 and Gen. Mun. Law § 50-e, (b) the Complaint fails to allege facts plausibly suggesting a claim for intentional infliction of emotional distress, and (c) it is barred by the exclusivity provision of N.Y. Workers' Comp. Law § 29(6); (5) Mrs. Bachus's retaliation claim must be dismissed because the Complaint fails to allege facts plausibly suggesting that SCSD violated any constitutionally protected right of intimate association that Mrs. Bachus has with her husband; and (6) Plaintiffs' claims for compensatory damages in their First, Second, and Fourth Causes of Action must be dismissed because Plaintiffs have failed to allege facts that plausibly suggest that they suffered an actual injury.   (*See generally* Dkt. No. 22.)

7

Generally, in support of his motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), in addition to advancing all of the arguments raised by Defendant SCSD, Defendant San Angelo argues that, because Plaintiffs' retaliation claims fail to allege facts plausibly suggesting that Defendant San Angelo participated in any alleged wrongdoing, these claims against him should be dismissed.  (*See generally* Dkt. No. 29.)

In Plaintiffs' response to the motions filed by Defendants SCSD and San Angelo, they argue as follows: (1) there are no heightened pleading requirements imposed by 42 U.S.C. § 1983; (2) the Complaint alleges facts plausibly suggesting municipal liability by alleging that (a) Defendant Raucci was Mr. Bachus's supervisor, whose conduct may be imputed to SCSD, and (b) Defendants Stricos and San Angelo, as supervisory officials, failed to address retaliatory actions taken by Defendant Raucci; (3) Mr. Bachus's first retaliation claim should not be dismissed because (a) speech related to Mr. Bachus's announcement of his intention to run for CSEA President, as well as a complaint about Defendant Raucci's conduct on and before January 22, 2009, involve matters of public concern, and (b) the Complaint alleges facts plausibly suggesting that Mr. Bachus suffered adverse employment action as a result of his engagement in this speech; (4) Mr. Bachus's second retaliation claim should not be dismissed because (a) association with CSEA involves a matter of public concern, and (b) the Complaint alleges facts plausibly suggesting that Mr. Bachus's association with CSEA was a substantial motivating factor in the retaliatory conduct he experienced; (5) the Complaint alleges facts plausibly suggesting that Mrs. Bachus was retaliated against based upon her intimate association with her husband; and (6) the argument that Plaintiffs may not recover compensatory damages

for failure to allege "actual injury" is misplaced.[1]  (*See generally* Dkt. No. 32 [Plf.'s Response Memo. of Law].)

In his reply, Defendant San Angelo reiterates previously advanced arguments with added force.  (*See generally* Dkt. No. 33 [Def. San Angelo's Reply Memo. of Law].)  In its reply, in addition to reiterating previously advanced arguments, Defendant SCSD argues that Plaintiffs claims against SCSD must be dismissed because Plaintiffs have failed to allege facts plausibly suggesting that any individual Defendant was vested with final decision-making authority to bind SCSD.  (*See generally* Dkt. No. 35 [Def. SCSD's Reply Memo. of Law].)

## II.   LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

"A motion to dismiss on the basis that an action is barred by the statute of limitations is analyzed under Federal Rule of Civil Procedure 12(b)(6), not 12(b)(1)."  *Garner v. DII Indus., LLC*, 08-CV-6191, 2010 WL 456801, at *1 (W.D.N.Y. Feb. 4, 2010) (citing *Ghartey v. St John's Queens Hosp.*, 869 F.2d 160, 162 [2d Cir. 1989]).

It has long been understood that a defendant may base a motion to dismiss for failure to state a claim on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.  *Jackson v. Onondaga County*, 549 F. Supp.2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

With regard to the first ground, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  By requiring this "showing," Fed. R. Civ. P. 8(a)(2) requires that

---

[1]      Plaintiffs concede that their claim of intentional infliction of emotional distress should be dismissed.  (Dkt. No. 32, at 5.)

the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17.  The main purpose of this rule is to "facilitate a proper decision on the merits." *Rusyniak v. Gensini*, 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.).

The Supreme Court has long characterized this pleading requirement under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. *Jackson*, 549 F. Supp.2d at 212, n.20.  However, even this liberal notice pleading standard "has its limits." *Id*. at 212, n.21.  As a result, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet this liberal notice pleading standard. *Id*. at 213, n.22; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007).  In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69.  Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As have other Circuits, the Second Circuit has recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, including claims brought by *pro se* litigants (although the plausibility of those claims is to be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[2]  It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2).  *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (emphasis added).  That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim.  *Twombly*, 127 S. Ct. 1965, n.3 (citing *Conley*, 355 U.S. at 47) (emphasis added).  That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever.  Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level.[3]

As the Supreme Court explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

---

[2]      *Rusyniak,* 629 F. Supp.2d at 214 & n.34.

[3]      *Rusyniak,* 629 F. Supp.2d at 214 & n.35 (explaining holding in *Erickson*).

misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to

relief." *Ashcroft*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted].   Rule 8

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at

1949.  Thus, a pleading that only "tenders naked assertions devoid of further factual

enhancement" will not suffice.  *Id*.

III.   **ANALYSIS**

A.   **Mr. Bachus's Retaliation Claims Based on His Exercise of His Right to Freedom of Speech**

1.   **Mr. Bachus's Retaliation Claim Against Defendant SCSD**

As stated above in Part I.B. of this Decision and Order, Defendant SCSD asserts three

arguments in support of its request for the dismissal of this retaliation claim: (1) Plaintiffs have

failed to allege facts plausibly suggesting a custom or policy of retaliation; (2) the speech that

forms the basis of this claim does not involve a matter of public concern; and (3) the Complaint

fails to allege facts plausibly suggesting that the speech was a motivating factor in any alleged

adverse employment action.

Based on a liberal construction of Plaintiffs' Complaint, the Court rejects Defendant

SCSD's first argument.  "A school district's liability under *Monell* may be premised on any of

three theories: (1) that a district employee was acting pursuant to an expressly adopted official

policy; (2) that a district employee was acting pursuant to a longstanding practice or custom; or

(3) that a district employee was acting as a 'final policymaker.'" *Lytle v. Carl*, 382 F.3d 978,

982 (9th Cir. 2004) (internal citations omitted); *see also Pembaur v. City of Cincinnati*, 475 U.S.

469, 497 (1986).

Construed liberally, Plaintiffs' theories of liability in their Complaint are that (1) SCSD had a longstanding practice or custom of allowing Defendant Raucci to supervise staff despite knowing that he was violating their civil rights, and (2) Defendant Raucci was a final policymaker.

With regard to Plaintiffs' first theory of liability, the Second Circuit has held that "an individual official's acts can rise to the level of 'policy' when 'senior personnel' knowingly 'acquiesce' in their subordinates' behavior." *Krulik v. Board of Educ.*, 781 F.2d 15, 23 (2d Cir. 1986); *see also Rabideau v. Beekmantown Cent. Sch. Dist.*, 89 F. Supp.2d 263, 268 (N.D.N.Y. 2000) (Hurd, J.) (noting that this theory of *Monell* liability requires establishing that an individual with final policymaking authority that may be attributed to the school district "knowingly acquiesced in a subordinate's behavior").

Here, Plaintiffs have alleged facts plausibly suggesting that (1) on or about January 26, 2009, Defendants Stricos and San Angelo were made aware of Defendant Raucci's retaliatory actions, (2) Defendant Stricos subsequently conducted a limited investigation, and (3) ultimately nothing was done to address Plaintiffs' concerns.  However, the Complaint does not allege facts plausibly suggesting that, *before* January 26, 2009, Defendants Stricos and San Angelo had been made aware of Defendant Raucci's conduct toward his subordinates, such that their failure to take remedial actions on or after January 26, 2009, amounted to their knowing acquiescence in a longstanding *practice* or *custom*.

With regard to Plaintiffs' second theory of liability, the Supreme Court has stated that "whether a particular official has final policymaking authority is a question of state law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988).  Such individuals "can be identified by their

13

receipt of such authority through express legislative grant, or through their delegation of policymaking authority from those to whom the power has been expressly granted." *Soto v. Schembri*, 960 F. Supp. 751, 757 (S.D.N.Y. 1997). "As with other questions of state law relevant to the application of federal law, the identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge before the case is submitted to the jury." *Jett v. Dallas Indep. Sch. Dist*., 491 U.S. 701, 737 (1989).

"When examining an individual's status as a policymaker under *Monell*, 'the official in question need not be a municipal policymaker for all purposes.'" *Konits v. Valley Stream Cent. High Sch. Dist*., 01-CV-6763, 2006 WL 224188, at *5 (E.D.N.Y. Jan. 28, 2006) (quoting *Jeffes v. Barnes*, 208 F.3d 49, 57 [2d Cir. 2000]). "Rather, with respect to the conduct challenged, he must be 'responsible under state law for making policy in that area of the [municipality's] business, . . . [or must] have the power to make official policy on a particular issue, . . . [or must] possess[ ] final authority to establish municipal policy with respect to the action ordered." *Jeffes*, 208 F.3d at 57 (internal quotation marks omitted). As a result, the Court must determine whether Defendant Raucci was a policymaker for the subject matter involved in the action, namely maintenance workers' hours and responsibilities, and the imposition of discipline against them for insubordination.

Although Plaintiffs have not provided (and the Court is unaware of) any authority that supports a finding that a "*de facto* Director of Facilities" is a policymaker under New York law, the Court has found some authority that supports the view that the person or persons who are directly responsible for enforcing rules within each department within a school system may be

14

considered to have final policymaking authority.  *See Rabideau v. Beekmantown Cent. Sch. Dist.*, 89 F. Supp.2d 263, 268 (N.D.N.Y. 2000) (Hurd, J.) (holding that, because the principal of the school, who is "the highest ranking person in the school" is "directly responsible for discipline in her school and supervision over the teachers[,] . . . knowledge of her subordinate's behavior and acquiescence, if not direct participation[] in the conduct amounts to a custom or policy attributable to the District"); *see also Konits v. Valley Stream Cent. High Sch. Dist.*, 01-CV-6763, 2006 WL 224188, at *5 (E.D.N.Y. Jan. 28, 2006) ("[U]nder New York law, for purposes of the hiring of teachers to fill vacant positions, the superintendent and the board of education have policy making authority.  Similarly, the superintendent and the board of education may be viewed as having ratified the unconstitutional actions of their subordinates by acting on the recommendation of the hiring committee and appointing uncertified and lesser qualified teachers instead of Konits.").

Here, Plaintiffs have alleged that Defendant Raucci held the "*de facto* title of Director of Facilities," and that in this capacity he had the authority to change employee hours, deny or manipulate time records, change job descriptions, summarily discipline a complaining employee, and otherwise orchestrate an employee's removal from the Operations and Maintenance Department.  As a result, the Court concludes that Plaintiffs have alleged facts plausibly suggesting that Defendant Raucci was a policymaking official with regard to maintenance workers' hours and responsibilities.[4]

---

[4]       Having reached this conclusion, the Court pauses to note that Plaintiffs have not alleged facts plausibly suggesting that either Defendant Raucci or Defendant San Angelo was a policymaking official with regard to disciplining maintenance workers.  This is because Plaintiffs have not alleged facts plausibly suggesting who was responsible for disciplining Mr. Bachus, and/or what form of discipline Mr. Bachus experienced.  Instead, Plaintiffs have alleged only, in conclusory fashion, that (1) Mr. Bachus was disciplined for insubordination, and (2)

Furthermore, based on a liberal construction of Plaintiffs' Complaint, the Court rejects Defendant SCSD's second argument.  In their Complaint, Plaintiffs allege two separate types of protected speech with regard to this retaliation claim.  More specifically, Plaintiffs allege that (1) Mr. Bachus filed a complaint with Defendant Stricos regarding Defendant Raucci's conduct, "in an effort to bring to the District's attention . . . a matter of public concern," and (2) Mr. Bachus "announced that he intended to challenge Raucci for the . . . CSEA Unit Presidency[.]"  (Dkt. No. 1, at ¶¶ 42, 43.)

With regard to the complaint that Mr. Bachus filed with Defendant Stricos, "speech on a purely private matter, such as an employee's dissatisfaction with the conditions of his employment, does not pertain to a matter of public concern."  *Lewis v. Cowen*, 165 F.3d 154, 164 (2d Cir. 1999); *see also Illiano v. Mineola Union Free Sch. Dist.*, 585 F. Supp.2d 341, 354 (E.D.N.Y. 2008) (noting that school administrative employee's e-mail to former assistant superintendent of school district, discussing personal problems that employee was experiencing with office environment, did not address matter of public concern).  However, when a complaint concerns general problems in the work place, such as harassment or discrimination, it is a matter of public concern, regardless of whether the complainant is motivated by a personal grievance.[5]

---

Defendants Stricos and San Angelo made "unfounded determinations."  As a result, even assuming that Plaintiffs have alleged facts plausibly suggesting that Defendants Stricos and San Angelo were aware that Defendant Raucci repeatedly engaged in retaliatory conduct before January 22, 2009, the Court could not find that Defendant San Angelo was a policymaking official, such that his failure to ever address Defendant Raucci's behavior may give rise to *Monell* liability under the theory that Defendant Raucci was acting pursuant to a longstanding practice or custom.

[5]     *See Cortes v. City of New York*, 700 F. Supp.2d 474, 487 (S.D.N.Y. 2010) ("Plaintiff's allegations that multiple individuals were involved in the discrimination against him and that Defendants' retaliation and discrimination amounts to a policy that broadly affects

In their Complaint, in addition to alleging that Mr. Bachus filed a complaint with Defendant Stricos, Plaintiffs allege, in more specific terms, that "[o]n January 26, 2009, Plaintiffs reported the January 22, 2009 incidents to . . . [Defendants] Stricos . . . and . . . San Angelo, as well as . . . other incidents and *the overall dangerous and hostile employment atmosphere within the Operations & Maintenance Department*." (Dkt. No. 1, at ¶ 25) (emphasis added). The Court finds that these factual allegations plausibly suggest that Plaintiffs' complaint involved a matter of public concern. In addition, with regard to Mr. Bachus's announcement of his intention to run for CSEA Presidency, it is well established that such speech involves a matter of public concern.[6]

---

employees of the DOC are sufficient at the pleading stage to frame a question as to whether Plaintiff's 2004 Southern District complaint constituted speech as a citizen on matters of public concern."); *Sousa v. Roque*, 578 F.3d 164, 173 (2d Cir. 2009) (noting that "a speaker's motive is not dispositive in determining whether his or her speech addresses a matter of public concern"); *Rehman v. State Univ. of N.Y. at Stony Brook*, 596 F. Supp.2d 643, 656 (E.D.N.Y. 2009) ("The Court finds that plaintiff's complaints to . . . the President of SUNY Stony Brook, and others regarding billing practices, safety concerns, and credentialing of department members . . . were related to matters of public welfare, rather than merely to his own grievances, and are sufficient to survive the present motion to dismiss."); *Cotarelo v. Vill. of Sleepy Hollow Police Dep't*, 460 F.3d 247, 252 (2d Cir. 2006) (finding police officer's lawsuit is a matter of public concern because his allegations concerned "discrimination problems generally and were not limited to instances affecting only [the plaintiff]"); *McGrath v. Nassau Health Care Corp.*, 217 F. Supp.2d 319, 327-28 (E.D.N.Y. 2002) (holding that, because plaintiff complained about her own treatment and the treatment of other female employees, her speech addressed matters of public concern).

[6]    *See Swanson v. Van Otterloo*, 993 F. Supp. 1224, 1239 (N.D. Iowa 1998) (finding that special deputy's statements that he intended to run against sheriff in upcoming election related to matter of public concern); *Scott v. Goodman*, 961 F. Supp. 424, 441-42 (E.D.N.Y. 1997) (finding that city transit authority employee's membership in union, running for union office, and campaigning against proposed collective bargaining agreement were matters of public concern); *Wallace v. Benware*, 67 F.3d 655, 661 (7th Cir. 1995) (holding that while the elected county sheriff could, without violating the First Amendment, discharge or demote the deputy who ran against him, the sheriff could not retain the deputy but engage in retaliatory harassment against him because of that candidacy); *Click v. Copeland*, 970 F.2d 106, 111-12 (5th Cir. 1992) (holding that deputy sheriffs who ran against the sheriff were engaged in conduct

Finally, based on a liberal construction of Plaintiffs' Complaint, the Court rejects Defendant SCSD's third argument.  Plaintiffs' Complaint alleges that, after learning of Mr. Bachus's intention to challenge him for the position of CSEA President, Defendant Raucci (1) made disparaging remarks against Mr. Bachus in front of his co-workers, (2) physically threatened Mr. Bachus, and (3) demoted Mr. Bachus to the position of cleaner.  Plaintiffs' Complaint further alleges that, after becoming aware that Mr. Bachus had complained about Defendant Raucci's behavior, Defendant Raucci (1) instructed Mr. Bachus to report to the high school to perform menial tasks, and (2) made a request to Superintendent Ely that Mr. Bachus be suspended for a period of ninety days for his conduct.  In other words, Plaintiffs' Complaint alleges facts plausibly suggesting that Defendant Raucci's retaliatory actions were motivated by Mr. Bachus's speech.

In sum, Plaintiffs have alleged facts plausibly suggesting that (1) Mr. Bachus spoke about two matters of public concern, (2) Mr. Bachus suffered adverse employment action, and (3) the speech was at least a substantial part or motivating factor in the adverse employment action. Moreover, based on Plaintiff's allegation that Defendant Raucci was a "*de facto* Director of Facilities" who had the authority to change employee hours and job positions, and oversaw time records, Plaintiffs have alleged facts plausibly suggesting that Defendant Raucci was a person with final policymaking authority in the area of maintenance workers' hours and responsibilities. As a result, this claim survives Defendant SCSD's motion to dismiss.

### 2.    Mr. Bachus's Retaliation Claim Against Defendant San Angelo

As stated above in Part I.B. of this Decision and Order, Defendant San Angelo asserts three arguments in support of his request for the dismissal of this claim: (1) the Complaint fails

---

that addressed matters of public concern and therefore some First Amendment protection attached).

to allege facts plausibly suggesting that Defendant San Angelo participated in any alleged wrongdoing; (2) the speech that forms the basis of this claim does not involve a matter of public concern; and (3) the Complaint fails to allege facts plausibly suggesting that the speech was a motivating factor in any alleged adverse employment action.

Based on a liberal construction of Plaintiffs' Complaint, the Court accepts Defendant San Angelo's first argument.  "In this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977).

> Personal involvement can be shown by[] evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

*Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122, 127 (2d Cir. 2004). (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 [2d Cir. 1995]).  As noted above in Part III.A.1. of this Decision and Order, Plaintiffs have failed to allege facts plausibly suggesting that Defendant San Angelo (1) investigated Defendant Raucci's behavior, or (2) disciplined Mr. Bachus for his behavior stemming from the incidents that occurred on January 22, 2009.  In addition, as noted above in Part III.A.1. of this Decision and Order, Plaintiffs have failed to allege facts plausibly suggesting that Defendant San Angelo created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom.

At best, the Complaint may be construed as alleging that, as a result of Plaintiffs' meeting with Defendants Stricos and San Angelo regarding Defendant Raucci's behavior, Defendant

Stricos conducted an inadequate investigation, which improperly allowed Defendant Raucci too much leeway, and which resulted in Mr. Bachus being disciplined for insubordination. However, a supervisory official such as Defendant San Angelo is entitled to rely on the findings and recommendations of his subordinate, in this case Defendant Stricos, provided that he had no reason to believe that (1) Defendant Stricos had an improper motive, or (2) the findings from the investigation were erroneous in light of his personal knowledge of Defendant Raucci's past behavior. *Cf. Vega v. Artus*, 610 F. Supp.2d 185, 199, n.13 (N.D.N.Y. 2009) (Suddaby, J.) ("Prison supervisors are entitled to refer letters of complaint to subordinates, and rely on those subordinates to conduct an appropriate investigation and response, without rendering the supervisors personally involved in the constitutional violations alleged in the letters of complaint.") (citing cases).  Here, Plaintiffs have failed to allege facts plausibly suggesting that (1) at the time Defendant Stricos began his investigation, Defendant San Angelo had reason to believe that Defendant Stricos had an improper motive, or (2) Defendant San Angelo should have known that Defendant Stricos's findings from his investigation were erroneous in light of Defendant San Angelo's personal knowledge of Defendant Raucci's past behavior.[7]  It bears noting that negligence is not actionable under the First Amendment (or any other provision of the Constitution).  *See Cusamano v. Sobek*, 604 F. Supp.2d 416, 498 (N.D.N.Y. 2009) (Suddaby, J.) (collecting cases).

---

[7]     The Court notes that, on February 26, 2008, an action was commenced in this Court against Defendant Raucci (and others) based, in large part, on Defendant Raucci's alleged discriminatory treatment of a co-worker.  *See Kriss v. Schenectady City Sch. Dist.*, 08-CV-0230, Complaint (N.D.N.Y. filed Feb. 28, 2010).  The Court notes further that Defendant Stricos was a Defendant in that action.  As a result, the Court recognizes the possibility that, at the time Defendant Stricos began his investigation on January 29, 2009, Defendant San Angelo may have been aware of Defendant Raucci's past behavior.  However, as Plaintiff's Complaint is currently pled, the Court is unable to conclude that Plaintiff has alleged facts plausibly suggesting such knowledge.

Simply stated, Plaintiffs have failed to allege facts plausibly suggesting that Defendant San Angelo (1) failed to remedy a wrong after being made aware of it, or (2) exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring. Indeed, Plaintiffs have not even alleged facts plausibly suggesting that Defendant San Angelo was Defendant Raucci's supervisor. As a result, Plaintiffs have failed to allege facts plausibly suggesting that Defendant San Angelo was grossly negligent in supervising Defendant Raucci.[8]

For these reasons, Plaintiffs' first retaliation claim against Defendant San Angelo is dismissed.

**B.      Mr. Bachus's Retaliation Claim Based on His Exercise of His Right to Freedom of Association**

**1.      Mr. Bachus's Claim Against Defendant SCSD**

As stated above in Part I.B. of this Decision and Order, Defendant SCSD asserts three arguments in support of its request for the dismissal of this claim: (1) Plaintiffs have failed to allege facts plausibly suggesting a custom or policy of retaliation; (2) association with CSEA does not involve a matter of public concern; and (3) the Complaint fails to allege facts plausibly suggesting that Mr. Bachus's association with CSEA was a substantial motivating factor in any alleged retaliatory conduct.

For the reasons stated above in Part III.A.1. of this Decision and Order, the Court rejects Defendant SCSD's first argument. In addition, the Court rejects Defendant SCSD's second argument, because an individual's association with his Union involves a matter of public concern. *See Scott*, 961 F. Supp. at 441-42 (finding that city transit authority employee's membership in union was a matter of public concern). Finally, the Court rejects Defendant

---

[8]      For the reasons stated above in Part III.A.1. of this Decision and Order, the Court rejects Defendant San Angelo's second and third arguments.

SCSD's third argument because (1) Defendant Raucci was an individual with final policymaking authority with regard to maintenance employees' hours and responsibilities, and (2) Plaintiff has alleged facts plausibly suggesting that Defendant Raucci's retaliatory acts were based on Mr. Bachus's announcement of his decision to run for CSEA President.[9]

As a result, Plaintiffs' second retaliation claim against Defendant SCSD survives Defendant SCSD's motion to dismiss.

### 2.    Mr. Bachus's Claim Against Defendant San Angelo

As stated above in Part I.B. of this Decision and Order, Defendant San Angelo asserts three arguments in support of his request for the dismissal of this claim: (1) the Complaint fails to allege facts plausibly suggesting that Defendant San Angelo participated in any alleged wrongdoing; (2) the association which forms the basis of this claim does not involve a matter of public concern; and (3) the Complaint fails to allege facts plausibly suggesting that the association was a motivating factor in any alleged adverse employment action.

For the reasons stated above in Part III.A.2. of this Decision and Order, the Court accepts Defendant San Angelo's first argument and dismisses this claim against him.

### C.    Mrs. Bachus's Retaliation Claim Based on Her Intimate Association with Her Husband

### 1.    Mrs. Bachus's Retaliation Claim Against Defendant SCSD

As stated above in Part I.B. of this Decision and Order, Defendant SCSD asserts two arguments in support of its request for the dismissal of this claim: (1) Plaintiffs have failed to allege facts plausibly suggesting a custom or policy of retaliation; and (2) the Complaint fails to

---

[9]    Defendants argue that an *announcement* of an intent to run for president is unrelated to *association* with the Union.  The Court disagrees.  The Court finds that running for Union President is one of the many ways in which a Union member associates himself with his or her Union.  In addition, the Court finds that adverse action taken against an individual based on his or her decision to run for Union President impacts that individual's association with the Union.

allege facts plausibly suggesting that SCSD violated any constitutionally protected right of intimate association that Mrs. Bachus has with her husband.

As an initial matter, for the reasons stated above in Part III.A.1. of this Decision and Order, the Court rejects Defendant SCSD's first argument.  Moreover, based on a liberal construction of the Complaint, the Court rejects Defendant SCDS's second argument.  The Second Circuit has made clear that "a spouse's claim that adverse action was taken solely against that spouse in retaliation for conduct of the other spouse should be analyzed as a claimed violation of a First Amendment right of intimate association." *Adler v. Pataki*, 185 F.3d 35, 44 (2d Cir. 1999).  In *Adler*, the plaintiff was permitted to proceed with his right of intimate association claim that challenged state conduct which "seeks to penalize him with the loss of his job because of its displeasure with the conduct of his wife." *Adler*, 185 F.3d at 44; *see also Sutton v. Village of Valley Stream*, 96 F.Supp.2d 189, 192-93 (E.D.N.Y. 2000) (holding that plaintiff had stated a claim for violation of his First Amendment right to intimate association where he alleged that his employer harassed him in retaliation for his father's political activities).

Here, Plaintiffs have alleged facts plausibly suggesting that Defendant Raucci turned off the heat in Mrs. Bachus's classroom for a period of time in the middle of the winter because of her relationship to her husband, who had (1) announced that he intended to run for CSEA President, and (2) complained to Defendants Stricos and San Angelo regarding the retaliatory conduct he experienced from Defendant Raucci subsequent to his announcement.  As a result, Plaintiffs have alleged facts plausibly suggesting that adverse action was taken against Mrs. Bachus based on her intimate association with her husband.[10]

---

[10]     The Court notes that, to the extent Mrs. Bachus alleges that she experienced "adverse action" in the form of the threat allegedly made by Defendant Raucci to Mr. Bachus regarding Mrs. Bachus, the Court finds that, as alleged, that verbal threat does not give rise to an associational retaliation claim possessed by Mrs. Bachus for the following two reasons: (1) as alleged, the threat did not constitute sufficiently serious adverse action for purposes of the First

### 2.       Mrs. Bachus's Retaliation Claim Against Defendant San Angelo

As stated above in Part I.B. of this Decision and Order, Defendant San Angelo asserts two arguments in support of his request for the dismissal of this claim: (1) the Complaint fails to allege facts plausibly suggesting that Defendant San Angelo participated in any alleged wrongdoing; and (2) the Complaint fails to allege facts plausibly suggesting that Defendant San Angelo violated any constitutionally protected right of intimate association that Mrs. Bachus has with her husband.

For the reasons stated above in Part III.A.2. of this Decision and Order, the Court accepts Defendant San Angelo's arguments and dismisses this claim against him.

### D.       Plaintiffs' Claims for Compensatory Damages

As stated above in Part I.B. of this Decision and Order, Defendants SCSD and San Angelo argue that Plaintiffs' claims for compensatory damages in their First, Second, and Fourth Causes of Action must be dismissed because Plaintiffs have failed to allege facts plausibly suggesting that they suffered an actual injury.  In their Complaint, Plaintiffs have alleged facts plausibly suggesting that, as a result of Defendant Raucci's retaliatory conduct, Plaintiffs have suffered mental and emotional injuries.  Certainly, such injuries constitute compensatory damages.  Moreover, the Court has already concluded that the Complaint alleges facts plausibly suggesting that Defendant Raucci was a person with final policymaking authority with regard to maintenance employees' hours and responsibilities.  As a result, the Court rejects the argument that Plaintiffs' claims for compensatory damages must be dismissed.

---

Amendment because it was vague, merely verbal, and communicated only to Mr. Bachus; and (2) as alleged, there was an insufficient causal connection between Mrs. Bachus' intimate relationship with Mr. Bachus and the threat, because the substantial motivating factor of the threat appears to have been Mr. Bachus' protected speech, not Mrs. Bachus' inmate relationship with him.

E.      Plaintiffs' "Motion" to Amend

For the sake of clarity, the Court notes that, in their memorandum of law in opposition to the motions to dismiss, Plaintiffs argue that, "[t]o the extent that the Court believes it necessary to elaborate, beyond the current Complaint, as to the specific notice that occurred prior to January 26, 2009[,] which leads Plaintiffs to their assertion that it was a longstanding practice or custom of the SCSD to allow Raucci to supervise a staff of close to a hundred individuals with knowledge that he was violating their civil rights, Plaintiff would respectfully request an opportunity to amend his Complaint to include previous allegations which were brought to the attention of Dr. San Angelo, a previous Superintendent[,] and members of the SCSD Board of Education concerning similar conduct alleged by the Plaintiff."  (Dkt. No. 32.)  As an initial matter, this request has been submitted, not as a proper motion, but merely as an argument raised in a response memorandum of law.  As a result, Plaintiffs' request is unaccompanied by an affidavit, a specific identification of the proposed amendments, and a copy of the proposed amended pleading, as required by the Local Rules of Practice for this Court.  *See* N.D.N.Y. L.R. 7.1(a)(4) (noting that "[a] party moving to amend a pleading pursuant to Fed. R. Civ. P. 14, 15, 19-22 must attach an unsigned copy of the proposed amended pleading to its motion papers").  Accordingly, Plaintiffs' request is denied without prejudice.[11]

**ACCORDINGLY,** it is

**ORDERED** that Defendant SCSD's motion to dismiss (Dkt. No. 22) is **DENIED**; and it is further

---

[11]      The Court notes that this denial in no way prohibits Plaintiffs from filing a proposed amended pleading that complies with the Federal Rules of Civil Procedure and the Local Rules of Practice for this Court.

**ORDERED** that Defendant San Angelo's motion to dismiss (Dkt. No. 28) is

**GRANTED**, and Plaintiff's first, second and third retaliation claims against Defendant San

Angelo are **DISMISSED** without prejudice.

Dated: February 10, 2011
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge